Please call the next case Justices Court Counsel Peter Lorenz on behalf of Appellant Siemens Building Technology Siemens is here on this appeal, this very narrow appeal with one issue that it complains of, namely an order for prescribed care given by the Commission, modifying an otherwise decision by the arbitrator on a consolidated hearing that Respondent argues, excuse me, Appellant argues the Commission did not have the power to issue and also was against the manifest weight of the evidence. I'll first address the issue of claimed error of law with the order of the Commission specifically stating that it's the Commission's view that the Respondent should have followed up on the recommendation of its Section 12 examiner that the Petitioner undergo a neuropsychological evaluation. The order portion itself also refers to the order of a recommendation for that to occur having been recommended by Dr. Lanoff. So it's your position as I'm reading the argument, you're contending that Section 8A covers only medical procedures or medical services prescribed by the treating physician. Is that your interpretation? That is our interpretation of Section 8A. So let me ask you a very simple question. Sure. Does the plain language of 8A provide, contain such a limitation? Does it state it could not be a psychological exam for medical reasons? Does it state that? It does not have that limitation. But this is an important point because the relationship, the patient-physician relationship never began in this case with this particular patient. This is important because in plantation manufacturing, when this Court struggled with whether or not prescribed as opposed to recommended care was incurred under Section 8A, it decided that when the physician-patient relationship begins, when there is a prescription for care, notwithstanding the fact that it has not yet been performed, it's incurred under the Act. Our argument here is that no such prescription for care can occur and therefore cannot be incurred under Section 12 of the Act. It also ---- So you're taking a more subtle position. Is your position, is it a moving target? Are you saying that as a matter of law under Section 8A, you can't get anything other than medical procedures or services? You can't get psychological testing? Or is your position it never got to the point since it was never specifically prescribed, we don't even get into the plain language? I'm not sure I understand your position. Okay. I'll make it more clear. Our position is that under Section 8A, psychological care from a treater can be prescribed, not yet performed, and incurred, and therefore ordered by the commission. But what cannot occur, what is beyond the bounds of Section 12 and also 19C, is a recommendation, not a prescription, a recommendation for psychological care or any medical care that the commission may then order. And the reason for this is as follows. The court implantation addressed its attention specifically to the term in Section 8A, incurred. The patient-physician relationship must have been established. Although prescribed, not recommended, but prescribed, and not yet done, it was determined to be incurred. Section 12 does not have any provision whatsoever for prescription. And in fact, the issue here is larger than the act itself, this Court's interpretation of it. It's a patient-physician relationship that the commission here overstepped its bounds on. I ask you to look. Well, doesn't it say in 8A that it has to be prescribed by a treater? It doesn't say that. It doesn't say that. It doesn't say that. But necessary first aid medical and surgical services and all necessary medical surgical hospital services thereafter incurred limited, however, to that which is reasonably required to cure or relieve the effects of the accidental injury. Now, this doctor recommended this test for a reason, didn't he? This doctor recommended this test for a reason under Section 12 for the purpose of the Respondent assessing the nature and extent, probable duration of compensation owed under the act. This doctor, from the very first time that he saw the patient, made it clear that the patient repeatedly asked him for medical advice. Does an MRI cure anything? No. Does it treat anything? No. It's an assistive diagnostic test. It's a test that is performed to determine what the patient's condition is. That's correct. And what does a neuropsychological exam do? A neuropsychological examination aids in a diagnosis of a condition. It really is no different than an MRI, other than it does a different thing. I mean, it works for psychological reasons as opposed to determining whether you have something inside of you. It is for the following reason. It is because there's a certain medical and psychological protocol involved with it. It takes several hours to perform. It's conducted under certain psychological conditions. The object of the test is the same, and that's to determine the condition of the patient. But the condition of the patient, once arrived at and diagnosed by a Section 12 examiner, can be done. A diagnosis can be arrived at under Section 12. But unless there's a patient-physician relationship, no prescription for the care can be given, and therefore, it cannot be incurred under Section 8A. Isn't that problematic? Yeah. A situation that you're engaging in or inviting, because you've seen situations where a Section 12 examiner becomes a treater. Absolutely. So at what point are you saying, then, that what that doctor recommends becomes a valid prescription? Well, two things must happen. One, there must be a choice by the patient to treat. And, two, there must be a consent to treat by the doctor. The doctor, in this particular situation, notwithstanding the patient's specific presentation to him requesting medical advice, specifically explained to her that I am not a treating physician. She's here for an independent evaluation, and I cannot give her medical advice. There's no question that, very often, examining physicians, almost always under Section 12, become treating physicians. But they cannot become treating physicians unless two circumstances obtain. One is the choice, which is a choice under Section 8A, to treat with that physician and the physician's consent to treat. But if the physician is examining under Section 12 and makes a recommendation, not a prescription, a recommendation for a procedure, whether diagnostic or invasive, it is beyond the commission's power to order that that occur, because it's not incurred. Let me just, not to belabor this. Originally, it seemed like your position was, as a matter of law, under this section, they had no authority to order a neuropsychological exam. You're not saying that you're almost conceding they could, but here the conditions were such that they couldn't because, A, at the time he was not a treating physician, and, B, it was a recommendation, not a prescription. Is that the essence of your argument? That's the essence of the argument. There is no patient-physician relationship that began. In fact, there's a specific disclaimer that it had attached. There was a recommendation, but not a prescription, for a certain procedure that may aid in diagnosis, and that the exam occurred under certain independent conditions for the purpose of determining the nature, extent, and probable duration of the condition and how much may or may not be owed under the Act. But a recommendation is not a prescription. Evaluation is not a prescription. Because it's then not incurred. It is not incurred under the Act unless there's a prescription for a certain medical or psychological procedure to occur. And your authority for that is? Because otherwise, because there is not a patient-physician relationship that begins. It requires two things. It requires that it be sought out by the patient, that occurs to cure and relieve under Section 8A, and there must be consent by the evaluator, that the recommendation then changes the nature of the relationship between the patient and physician to one of a treater. Now, are you aware of a case, Justice Alito, that specifically covers this fact and said you can't get it because in this case, patient-client, patient-doctor relationship didn't exist and there was no prescription, just a recommendation. Do you have a case that says that? A case that says that a Section 12 examiner recommending a procedure ordered by the commission? No. No. And I've exhaustively researched the question. And can't the commission look at the record and see a recommendation from a medical person and say in their own finding that that's necessary? Not unless there's a patient-physician relationship that obtains. And where do you find that? From plantation manufacturing. The whole nature of the inquiry by this Court was an inquiry as to whether or not a prescribed lumbar surgery was incurred under the Act because two physicians had, two treating physicians, two treating physicians had prescribed the procedure post-award, the claimant herself then cited she wanted. So it already started with prescribed in the plantation, didn't it? That's right.  You don't have plantation limited to only prescribed. You have, there are no reported cases in which a recommendation by a Section 12 examiner for a certain kind of care, whether prescriptive or not. Wait a minute. Slow down a second. Neuropsychological examination isn't care. It's a test to determine whether the pain the man is suffering is of the level he claims it to be. This is a test to determine the nature and extent of his injury. Your expert says to determine whether, you know, his pain is at this level, we need a neuropsychological evaluation and I'm not qualified to do it. It's got to be done for a day. It should be done. This is here at a 19B. That's right. Sooner or later, this Commission is going to have to determine the full nature and extent of this man's injury in order to determine the benefits he gets. That's right. Your own expert says in order to do that, I need a neuropsychological test. But he does so opining and recommending, not prescribing, that it occur. What difference does that make? I mean, that is a, if your expert says in order to cure this man, he needs to have his leg amputated, I'd agree with you 100%. He's not his treater and he ought not be recommending it. He's talking about a test to determine the nature and extent of the guy's injury and the Commission wants to know that. Justice, the, it is not, an MRI is different than a neuropsychological test because it occurs under a protocol. It requires several hours. This physician was retained for the purpose of opining and recommending, not prescribing. And this particular recommendation, which is not a prescription, cannot be incurred under Section 880 because he's not a treater. Can I ask you a question, a serious question? Sure. How much does a neuropsychological examination cost? Perhaps about as much as we offered before the case wouldn't settle, but I don't know. Probably $1,000 a day? That's what this whole appeal is about? The whole appeal is not about this. The whole appeal is about whether or not this particular test ordered by the Commission can be ordered by the Commission as beyond its power under Section 12. I'd like to then just briefly go on to the fact that it's our argument that it's beyond the manifest, or excuse me, that it's against the manifest weight of the evidence because by his own limitation, the physician said that it is not causally related to the accident. Reserve time that has now expired for rebuttal. You have five minutes on the fly. Thanks. Thank you. Counsel, you heard the opposing counsel summarize what this case was about in a really precise manner. Do you remember that summary? Yes, Your Honor. Good. Yes, Your Honor. Do you want to address, go right to that point? I would, Your Honor. I would agree that there is no difference between a recommendation and a prescription. Well, what's this plantation case he's talking about that says it stands for the proposition there is a difference? Well, I think he was focusing on the word incurred that they used. They were focusing on their interpretation of using the word incurred as a prescription from a doctor, that they include a prescription for a future medical as medical treatment that has not yet incurred, but the Commission has the right to award that prospective medical treatment. I think that makes no difference in the situation that we're dealing with here today. We have a recommendation from a physician that was adopted by the Commission. The Commission adopted this. Well, you know, your opponent has an interesting point, and I want to put it in a different focus. It's your obligation to prove what the nature and extent of the claimant's injury is. It's not their obligation to assist you in doing it. They hire a Section 12 examiner. He gives his opinion and then turns around and says, you know, if you really want to know the level of pain that this guy's in, you need a neuropsychological examination of this guy to determine nature and extent. Wasn't it then incumbent upon you to get it as the person who's burdened? I agree, Your Honor, and that's part of what the issue is in this case. All treatment was being denied. There's multiple recommendations from multiple medical providers of our own choices for treatment for psychological evaluations, psychiatric evaluations, neurological evaluations. All of this treatment was denied. So there are multiple recommendations from our own treating physicians that were part of the initial trial in this case. Now, the fact is the Commission decided not to adopt the treating physician's recommendations and instead adopted the respondent's IME physician's recommendations regarding MMI and for the treatment of this patient. So there was, the Petitioner did set forth... Well, I suppose then the question becomes, does the Commission have the right to tell, to order where proofs come from? Do they have the right to do that? Or are you left to your own devices? Either you prove it to them or you lose. I think that since prospective medical treatment was at issue in this case and that the Commission then agreed with the respondent's IME... This is not treatment. You and I both know that. Oh, no, I agree that it's not treatment at all. It's a consultation. A consultation to determine what the nature and extent of the injury actually is to determine further whether or not there's any other treatment necessary to cure the ill effects of what the potential injury is. Well, I mean, I think it's a test to determine whether he's actually in pain, whether he's faking it, or what they can do about it. Now, the question is, can the Commission order a test to make that determination? Do they have the power? I believe they do have the power. I believe they have the power to, when they're adopting the decisions of who they're going to go with for deciding a case, if they're adopting their experts, physicians' recommendations, I do believe they have the power to order what is being recommended, not treatment. They may have the power to do it, but here's the point that concerns me and raises a question in my mind. Isn't there a potential for abuse here under the circumstance? If we were to say that, you know, the IME comes in, and then he makes an off-the-cuff recommendation, like he said, if you really want to know this, to sort of making that statement, and then the Commission can seize on him, you'll go, ah, they've got to pay for this when you didn't ask for it. I mean, you know, there's a potential for abuse here, is there not? And I agree that it potentially exists, but in this case it doesn't, because there are so many different recommendations from multiple physicians for psychological testing and analysis, that it's not so slippery slope or far-reaching to have that ordered in the context of the matter. In this case, though, you know, because he makes an off-the-cuff recommendation, they sort of seize on that. Now, isn't it your obligation to move forward with this? Well, and that's why I was trying on the 19B, to try to move forward with the recommendations of the treating physicians to have treatment ordered. Well, yeah, this is a 19B, okay? So what you're saying is that they said, okay, you're treaters, whatever reason, let's look at an independent medical examiner, because we think they're more credible, okay? They're not purchased opinions, okay? They probably are, but the bottom line is, as a respondent, comes up with this recommendation for this diagnostic procedure. Because 8A doesn't say treatment only. There's no way you can read that language to say treatment only. Diagnostic response, expansive enough, okay? Necessary, reasonably required, cure or relieve. You can put all those words together, and you can cover diagnostic, period. What the real question is, can they do that with a Section 12 examiner? I believe that they can if they are adopting that physician's opinions in the context of a 19B hearing, not to say the injury actually is in the case, especially in a 19B decision, because that is, the doctor ran off the opinion that they adopted, said the purpose of this is to determine whether the petitioner is malingering, has an actual psychological underlying disease, or the third one was, forgive me, or was actually manipulating the results. And that was the purpose of the recommendation. And to determine the nature and extent of injury, that has to be answered. It's one of those three things, and that's the purpose of the consultation. Dr. Ranoff specifically stated in his report, it should be done from an IME standpoint. An IME standpoint, because he wasn't qualified to make the determination. From an orthopedic standpoint, he was done with her. He recommended that if you really want to evaluate this person, it needs to be done from a neuropsychological standpoint. And that's what the commission adopted his opinions, and that's why that testing was ordered. So we then get back to the point that my colleagues were saying. Is it within the power of the commission to do that? I mean, is it, is it, I mean, the analogy is to a trial court, you know, getting its own expert. Well, as far as burden of proof and who has to produce evidence, the commission, as prior fact, is obligated to consider all the evidence, regardless of who produced it, aren't they? Yes. I mean, we routinely instruct juries there to consider all the evidence, regardless of who produced it. Yes, Your Honor. So. I believe that's what the commission did. Part of your burden in the evidence? And again, it's a course of treatment that the petitioner wants, and was part of the initial hearing for the 19B for future medical treatment, was because nothing was being approved. And in this case, the petitioner wants to move forward with that consultation. It's not a situation where, again, with slippery slopes. So a slippery slope because you're saying, okay, because there was no acquiescence by the respondent to getting this, which you wanted, and their expert comes in and says, well, you're going to need this, that that's the way in which the break is put on a slippery slope. I believe so. Yes, Your Honor. Actually. I do. And I believe that in this specific instance, with the totality of the record taken into consideration with the multiple recommendations, that the decision should be affirmed. Thank you, counsel. Counsel, you'll have five minutes to reply. Just a few clarifications on rebuttal. I recognize counsel wasn't trial counsel, but not all treatment was denied. It simply is not accurate to state that all treatment was denied. The other point I'd like to make on rebuttal is that there was no physician, other than the Section 12 examiner, that specifically recommended a neuropsychological evaluation. Well, you concede, though, that there were recommendations for other types of evaluations. No question about it. That was not, were not, excuse me, awarded by the commission. I point just to specifically. Okay. Let's take a different example. Let's say you've got a back injury. Yes. And the petitioner goes to 19B and his treater says surgery. Yes. Your Section 12 examiner says, no, he doesn't need surgery. I recommend conservative treatments and physical therapy. Can the commission not say we're going with the Section 12 examiner? We're going to order prospective physical therapy and so forth, just like he recommended. Justice, I believe if a patient-physician relationship has not obtained, they can't order. You're saying the commission could not do that? Yes. And I'd like to, if I may. Well, I guess my point is that kind of thing happens all the time. Well, also the kind of thing that happens all the time is somewhere in between your two examples on conservative care. Let's say ESIs, injections into the spine, which many consider to be invasive. There could not be an order, our argument goes, because there's not a physician-patient relationship to order ESIs. So in that kind of situation where you have a difference of opinion between the treater and the respondent's Section 12 examiner. Yes. About future prospective medical care in a 19B. Yes. What it boils down to is the commission either agrees with the treater or not. It's all or nothing on that. Can't follow what the Section 12 examiner recommends if he recommends some kind of future treatment. That is our argument under Section 8A, and I'd like to just further ferret out a point, though, on if the justices are more comfortable with what is a failure of proof relative to recommendations for specific psychological care, if you will. The record's pretty clear that very soon after, let's call it the cutoff date of 7-3-2003, there was a recommendation for psychological care by referral to a psychiatrist that was not awarded by the commission. The commission could have awarded that. They could have looked at this case, recognized it as having a psychological component, but they did not, and there was a failure of proof in that regard. Now, can I ask you a question? Sure. How do you get around 19C? Well, 19C could have been an evaluation ordered by the commission either on its own motion, of course, or that on the motion allowed by one of the parties, recognizing that the both evaluations and law on the point are as rare as hen's teeth or more. It was addressed in the W.B. Olson case relative to physical therapy, because the argument was made by the petitioner in that case, there's only two circumstances under which an individual that's claiming under the Act can be examined. And that's under Section 12 or 19C. Section 12 actually referencing 19C in the last sentence of the first paragraph of it. The purpose of it is to aid, of course, the commission's ability to decide disputed issues. The commission could have ordered a 19C in the circumstance to clarify the, let's call it, full-throated recommendation for a neuropsychological evaluation given by a Section 12 examiner. That could have aided what they may have decided relative to the psychiatric care that had been submitted into evidence and not awarded. Well, wait a minute. Under 19C, they have the right, in advance of and in connection with the hearing, to order on their own motion impartial physical or mental examination if they want to, and they can hand the bill to anybody they want to hand it to under 19. And in this particular case, it occurs to me that ultimately they're going to have to decide the nature and extent of this man's injury. And in order to determine whether the pain he claims he's suffering from is real or fake, they want this neuropsychological examination that your own expert says is necessary. So why can't they order him to do it? Well, a couple of things. This woman, excuse me, that wants the psychological evaluation, it's not clear really wants the psychological evaluation. She did present herself to the Section 12 examiner seeking medical advice that the examiner specifically declined to give her. Now, relative to your question on 19C, how can the commission be aided by 19C in this circumstance? The way they may be aided in this circumstance is twofold. One, they could award psychiatric care. They declined to do so. That's not before you. Two, she, of course, can seek further psychiatric care because her 8A rights are open. There can be, for instance, a referral for a neuropsych evaluation by a treater that they then could order. And their evaluator can do it themselves. They can order it themselves. Well, I think I've made that argument. I do think that unless a patient-physician relationship obtains, does not have the power to order prescribed care because it's not incurred under Section 8A. Okay. Thank you, counsel. This matter will be taken under advisement. This position will issue.